Good morning, Your Honors. My name is Paul Morris. I'm for Cingular Wireless. As Judge Paez observed in the last case, we're here because we're federal claimants trying to litigate a federal cause of action in a federal court and don't seem to be able to do so. This is actually even more, in our mind, egregious case than the last one you heard. Your case is better, right? Yes, Your Honor. We had one suit piled in federal court at the time that the district court decided Ciasponte to stop, abstain the federal claim and send us back to the state court on the state claims. That's not consistent with any of the rules regarding abstention and it's greatly inconsistent with what Congress was trying to do in enacting the Telecommunications Act. Let me just start by talking a bit about the differences between the Telecommunications Act and state land use claims that are both were at issue in the federal court. Congress did four relevant things in enacting the Telecommunications Act, recognizing that with respect to telecommunications and the wireless industry, there's a national interest that needs to be protected. Congress created a federal form for challenging the Telecommunications Act. It required prompt consideration of those claims. It created two federal-specific causes of action. One, a prohibition of services claim, and two, a discrimination claim. And lastly, with respect to other, more typical state land use issues, it created what I consider sort of an evidentiary and procedural-based solution. And in this latter regard, one has to see that Congress understood, in creating this federal cause of action, that the federal courts would indeed not only be deciding the federal-only claims, but would be deciding state land use claims, applying the federal evidentiary and procedural standards. The state law, LUPA, the Land Use Petition Act, is a general law dealing with land use petitions. There's nothing specific about cell towers. It requires, like the federal law, expedited consideration. But when you read these two together, what you come about is that there really is no conflict between the two statutory schemes. You're going to have some issues that overlap. For example, the federal requirement of substantial evidence on a written record. You're going to have some issues that are unique to the two statutory schemes. They're unique to the federal courts, the prohibition of service and anti-discrimination claims. And then you're going to have some issues that are perhaps unique to state law. For example, clear error of law, which are present in this case. And in this case, there are all types of issues present. Frankly, the strongest issue, from our point of view, is the prohibition of services claim, particularly after this Court's decision in the Metro PCS case, which came down in March. We want to litigate that claim as quickly as possible because we think that's a sure winner. Right now, we can't. We're left with litigating in the State court the substantial evidence issue, which is similar but not necessarily entirely the same between the State and federal law. An unresolved issue under federal law is who bears the burden on the substantial evidence issue. The district court in San Diego has ruled that it would be the county in this case that bears the burden. Under State law, it's singular, the applicant that bears the burden. So there are some differences there. And then there's some unique State law issues. So why doesn't Burford extension apply here? Burford extension does not apply because the federal government, I mean, sorry, Congress, has determined that there is a federal interest in the regulation of cell towers, unlike a situation in Burford where you really had a State regulatory scheme that was being attacked that addressed a specific industry, the oil industry. Whereas here, the federal government is not we're not trying to apply sort of due process or constitutional questions. The federal government has said there's a national policy interest in regulating cell towers that's at issue here that wasn't an issue in Burford. It's really this case is more like the New Orleans public service case where you have the federal interest in FERC and energy regulations that apply. And in the New Orleans public service case, the U.S. Supreme Court held that extension was not appropriate given that that national interest. So there's a big difference between Burford because you have in this case this federal declared congressional national interest in the regulation of the cellular industry, which is implicated by extension. You just want to put up this 150-foot tower that probably some people don't really like how it looks. And they also think that there might be some dangers. And so on all of that, the one sort of thing that I'm pulling out for you here has to do with that what users have when you have the gap in cell towers. And that's why we're really anxious. In the record below, in the administrative record, the administrative hearing examiner in Thurston County found, in fact, there was a substantial gap in singular service, but determined that that under State law, under State law and under their local code, that was not sufficient reason to grant a singular service. That was not sufficient reason to grant a permit. We would like to argue to the district court that under Metro PCS, the substantial gap in our service is a prohibition of service. Let me ask you, when you went to the superior court, after this was stayed, why? I don't think we had any choice because otherwise. You did go to the superior court, right? Yes, I did. You could have raised that Federal claim in the superior court, correct? We probably. Congress says any competent, any court of competent jurisdiction. We probably could have. Well, you could have. Yes, I know. But the situation arose. This is not the first time this situation has arisen in the Western District. This happened. We went to State court. We filed all our Federal claims in State court. We then got removed back to Federal court on our Federal claims. So I'm not sure it would have accomplished anything, first of all. But secondly, and more importantly, Congress, in enacting the Telecommunications Act, said you should have a Federal form. And I think because of some of the issues. Well, it says any competent court. That's true. But it gives us the right to determine that we're – what these cases generally come around to is people have concerns about this should not be in my backyard. You'd rather be in Federal court. Well, you're going to rather be in Federal court than with a local elected judge. Exactly. Well, you don't want to be in front – we haven't allowed you to do the sharing in the State of Washington. The judges who would be deciding the cases are the judges. Let me ask you this. Let's go back to Burford abstention, which is apparently – it's not clear exactly what the district court relied upon, but. No, it isn't. But, you know, if you look at the various doctrines that are available, if you go to Burford, you're not suggesting that Congress's adoption of the Telecommunications Act, that Congress intended to preclude the courts from utilizing abstention doctrines, are you? I don't think that the notion of abstention is not expressly addressed in the Telecommunications Act, but I think in light of the case law about abstention, the very narrow, extraordinary remedy that it is, in light of Congress's creating a Federal cause of action, it would be an extremely rare case. I mean, perhaps one could conceive. Well, as Callahan pointed out in the earlier case today, you know, abstention doctrines are the – are truly the exception. That's true. And I could – I guess. And other courts aren't to abstain unless the, you know, the criteria is there. I guess one could conceive of a case where the only issues raised would be State law issues. That is, we don't have any prohibition of service claim. We don't have any substantial evidence claim. That case perhaps would be a case that would be amenable to abstention, because then you'd be like the Colesman case, I believe, with strictly State land use issues. But I think where you have a Federal claim, there's no basis in any of the abstention doctrines to say that a Federal litigant should be stayed from proceeding on their Federal claim. It's now been almost two years since we filed the case originally. I want to ask. I think the Pullman abstention is the hardest here in terms of – but did – I want to ask, did your complaint in the district court raise any claim under the United States Constitution? No, it did not. All right. If we determine that your complaint did not raise a sensitive question of Federal constitutional law, and apparently you're saying it doesn't, does that mean that the Pullman abstention doctrine is not applicable, or does it mean that the other prongs of the doctrine become determinative? Yeah. I think it would mean that it's not applicable, because it specifically applies when there's an issue of a Federal constitutional question that can be avoided by application of the State law. But even if you got over that, the prongs that are looked to, that is some sort of complex, novel issue of State law, is not present here. Given Congress's enactment of the Telecommunications Act, this is not an area that's uniquely within the context of the State policy. So you would not get – I don't think you'd get it under either approach. I don't mean to interrupt your answer to Judge Callahan, but you just said that, in response to her question, that in the First Amendment complaint, you did not raise any Federal constitutional claims. But when I went through the complaint, at paragraph 72, you alleged the permit denial decision was erroneous and unconstitutionally based on vague, generalized goal statements in the Thurston County Zoning Code. Because the decision was not based on ascertainable standards, singular was denied proper notice. And you cite the U.S. Constitution, Amendment 14, Section 1. You also cite the Washington Code. So you're telling me you did not raise that claim? You're abandoning the claim? Well, let me say two things. First of all, it's principally a State law constitutional claim. Secondly, it was related to our – Well, you said – you cited the 14th Amendment to the United States Constitution. We were raising a Federal 1983 claim, which subsequently we now know from the United States Supreme Court is not a valid claim to raise under the Telecommunications Act. So the way the case is litigated at this point, we are raising essentially a prohibition of service claim under the Telecommunications Act, substantial evidence claim under both the Telecommunications Act and the State Act, and an error of law, application of law, and the question about vague and ambiguous standards under – Well, let me see. The recent case says you can't raise a 1980 – you can assert a 1983 claim for – on the basis of a violation of the Telecommunications Act. That's a little bit different. This is – you can still assert a 1983 claim asserting a violation of the Federal Constitution. Correct. Okay? So you're telling me I should read that as not what it says? My recollection of our brief – and this matter has been fully briefed before the district court – is that the cases that we relied on for that particular proposition, vague and ambiguous, were all State court cases. Now, those State court cases were dependent on both – there's obviously an overlap between State constitutional law and Federal constitutional law, and the due process claims arguably arise under both because the due process clause of the Washington State Constitution is very similar to the United States Constitution. But I guess I would – I would acknowledge that perhaps I did misspeak in that there is, in that sense, a Federal constitutional claim. But I still think even if there would be application of the Pullman doctrine because of that issue, which is not a significant issue in the case compared to the other issues, that the – there's no novel State law at issue. How about the zoning ordinance, the local zoning ordinance? Well, the – the applying a zoning ordinance is not a question of nobility if there's a newness or complexity of State law. You're taking a State overlap law, which we think is clear, and you're applying it essentially to the facts of a case through a local zoning code. Well, let me ask you this. As I understand the Washington scheme, and I'm certainly, you know, not as familiar with the Washington land use scheme as folks up here in Washington, but there's the broad State law that sets probably the parameters. Correct. Basic standards. And then the local counties, like Thurston County, can adopt their own ordinances as well, consistent with the State law. Is that correct? It's slightly different. The State Land Use Petition Act simply sets really sort of substantive standards in the sense of you have to have substantial evidence, you have to meet with sort of general legal standards. Well, that's for reviewing the ultimate decision. I'm talking about the substantive law of land use planning. Other than the – there's a State Growth Management Act, which requires land use planning on the local level. But in terms of how the substantive underlying land use codes, those are all a matter of county and lower law. There's no State land use code. When the county here, when the hearing examiner here denied the permit and it was upheld by the Board of Supervisors, they were essentially applying their own local county zoning standards to deny the permit. Exactly. Exactly. They were looking at the local county code as a basis to deny and the county comprehensive plan as a basis to deny. As far as you're concerned, those planning ordinances and whatnot are sufficiently clear, at least for purposes of the Federal Constitution, that there really is no way – there really is no ordinance that needs to be interpreted by the State law that were interpreted in such a way that would eliminate any possible Federal claim. I guess what I would say, and I'm trying to make sure that I preserve all my arguments below, is that the way that the State – sorry, the county has two aspects or three aspects of their code that are issued. They have a specific aspect dealing with wilder settler facilities, which we think is clear and should be applied and there's not a question about. But then they – what they have done here is denied our permit based on more generalized, vague and ambiguous criteria in the comprehensive plan and the general land use code, and we think that that is violative of Washington law dealing with due process, and I think that arguably is possible. But not the Federal Constitution. Well, there's no difference. I mean, we understand to rely on the State constitution in the first instance. You don't reach Federal constitutional issues unless you have to. There's no difference in the law, and there's no cases that suggest there's any difference in law between the State due process clause with respect to here. Especially when you're dealing with the land use issue, I think it would be the State constitutional due process protections that would apply. I'm not aware of any Federal protections that really would in any way provide greater protection than the State constitution. Well, what's the appropriate resolution if we determine that the district court did not adequately explain its reasons for abstaining? Should we make our own determination of whether abstention was appropriate or should we just vacate this, the district court's order and remand it for the district court? I mean, it was pretty sketchy. Yes, it was pretty sketchy. And as the executive software case would provide a basis for you to just remand it on that issue, we think that given the facts that are briefed by the parties, Your Honors can determine that abstention would never be appropriate in this case. And we would urge you to hold that in the first instance. If you're not prepared to go there, then we go back. But the problem is we're going to be back here, I imagine, in a matter of some time, and we'll just have further delay in resolution of our claim. You know, along that line, both in your briefing and in our argument, you have said, no, it's been two years and we still haven't been able to do it and this delay has been a real problem. I can't help but notice that between July 21st and May 7th, 2003-2004, ten months of that was due to a stipulated continuance. Well, it was due to a stipulated briefing schedule to, I think the original schedule was in February, and that was, again, worked out with counsel. We're trying to be cooperative in terms of getting a brief schedule. But we can't really blame the whole thing on the delay where that part of ten months was stipulated to you by you? No. I don't – we're not claiming that that initial part was inconsistent with the Federal Telecommunications Act. It's been – it is a longer period than we would have liked, but given the court's schedule. But ten months of that stipulated to. Well, the court would not give us a hearing date earlier than that. The original hearing date in February, the court would not give us an earlier hearing date than that. That was the first hearing date that we could get consistent with time to allow the briefing and the administrative record to be consumed. The State law gives you 90 days to hold a hearing. The first date after that period that the Federal court gave us was in February. There was a conflict, and so we did stipulate to the next available hearing date by the court, which the court gave us as May. We would have liked to have heard it earlier than that, but, I mean, we did agree that, consistent with what the court told us was available, that it was – the original hearing was put off until May. I just have a follow-up question to one that Judge Callahan asked you, which is what's the status of the court of appeal proceedings on the superior court's denial of your petition? We are in the middle of an appellate briefing on that. The State law issues. There's no oral argument set – certainly wouldn't be set for oral argument before the fall. But right now, we're in the process of filing our reply brief. I imagine if this case were to go back to the superior court, you might be confronted with another. In light of that, proceeding in the court of appeal, another request for a State of pending that decision as well. Well, I think at a minimum, we would like to get our Federal claim heard, because we think that based on the administrative finding that there's a substantial coverage gap here, and this Court's decision about that that does, in and of itself, provide a basis for probation and services claim, that we can resolve this case on that basis. We would have to make the decision as to what to do with the State law claims at that point, considering they're on appeal. Thank you. Do you want to say something, Dr. Butler? You have 25 seconds. Thank you. May it please the Court. I'm William Kammerer for Thurston County. With me at council table today, but not arguing, is Deputy Prosecuting Attorney Jeffrey Fansher. I'd like to start by correcting something Mr. Lawrence said in inviting his response, and that is regarding how this case arose. This action was filed in Federal court alone to begin with. It did not get to Federal court through removal. What happened is, over the scheduled briefing time, the parties briefed the issues, and then Thurston County learned that Singular had purchased AT&T Wireless Company. And for that reason, and because the record says that Singular provided service to this particular area of Thurston County through an arrangement with AT&T, we asked the court to remand the case to the Thurston County hearing examiner to discover and determine whether the purchase of AT&T provided Singular with an alternative to this 150-foot cellular antenna tower and would enable them to provide service. Judge Burgess initially agreed with that. On reconsideration by Singular, Judge Burgess issued a show cause order that we think provides the basis for declining supplemental jurisdiction of the state law issues. We briefed the issue further, and then Judge Burgess, who was sponte, ordered that the state law claims be dismissed, understanding they could be refiled in state court, and stayed the Federal claims under the Telecommunications Act, as well as the 14th Amendment. What abstention doctrine do you contend best supports the district court's decision? We think, given the hindsight we now have, based upon the fact that the superior court has rendered a decision on the state law claims in this issue, that the Colorado River abstention doctrine is most applicable here. That, at the time that he abstained, there was no parallel case pending. That's true. It requires a neutral act. So how can Colorado River now possibly justify what he did at that time? Because Colorado River recognizes that when there are exceptional circumstances that would justify the Federal court declining to exercise jurisdiction, that the stricter Pullman and Burford standards need not be met. You need a parallel case. At the time you grant the abstention order. And that was not present here. But we think under 28 U.S.C. section 1367. Shouldn't you – I mean, if you're correct, in response to Judge Callahan's question, it seems like that would be an issue that Judge Burgess could take up on a remand. We think that's unnecessary. First of all, we think under 1367C, which provides for grounds for declining supplemental jurisdiction, Judge Burgess's orders in this case furnish the basis for declining supplemental jurisdiction. The first of those criteria is the State claim presents novel or complex issues of State law. The second is that the State claims substantially predominate in Judge Burgess's decision of May 27, 2004, docket number 40. He said on page 3 that, quote, this cause of action, however, was not commenced in superior court. It was brought directly in Federal court. Well, that was perfectly proper. The Communications Act. But he goes on to say these facts give some indication that there may not be a substantial Federal question and that the real remedy sought is reversal of the hearing examiner's decision. The Court, therefore, questions whether the LUPA, that's the State law matter, belongs here at all. And that is the judge's recognition that elements 1 and 2 under 1367C apply here. Let me ask you a question. Sure. Supplemental jurisdiction is different than abstention. It is. And Judge Callahan was concerned. My follow-up question dealt with abstention, with the abstention doctrines. And your response was that Colorado River, in hindsight today, is the best ground of the abstention doctrine which we should rely today to affirm Judge Burgess' stay order. And I think we should start with 1367, but I'll get to abstention more specifically because the fourth criterion of 1367 is similar to what Colorado River says, and that is that there are exceptional circumstances where there are other compelling reasons to decline jurisdiction. In this case, although this exceptional circumstance was not present at the time Judge Burgess made his order, it is present now. And that is the State court has acted in a timely manner. It has made its decision. And to remand this case for a decision on the State law claims by the Federal District Court would duplicate that effort and risk causing a conflict between the State courts and the Federal courts. Well, what about the complaint, what about the significant gap in, the allegation of significant gap in wireless network? How is that going to be dealt with? That is purely a Federal issue under the Telecommunications Act, which we may not have to address if the court of appeals reverses the superior court on any of the three grounds under State law that Singular has raised, the substantial evidence question, the correct interpretation of the law question, and the question, which is purely a matter of State decisional law in Washington, as to whether the hearing examiner relied on what is called generalized community opposition as opposed to facts supporting his decision denying this application. Those decisions, if they are reversed, will obviate. But it's not going to, it could only, I guess, make it not necessary to resolve it, but it won't resolve it, right? It will not resolve it because Singular will have its application. It will be able to build its 150-foot cellular antenna tower in this rural residential neighborhood. That's the crux of the issue that has been decided in our favor by the superior court, as by the hearing examiner, but need not go back for a separate, perhaps conflicting decision by the district court. We think Judge Burgess's decision remanding this is a reflection of what has been said many times based upon an opinion of Justice Marshall in the Village of Belterra v. Boris case, 416 U.S. No. 1 at 13 in 1974, where he was dissenting on other grounds, but recognized, quote, zoning is a complex and important function of the State. It may indeed be the most essential function performed by local government, for it is one of the primary means by which we protect that sometimes difficult to define concept of quality of life. Our role is not, and should not be, to sit as a zoning board of appeals, end of quote. Many Federal courts since that time have echoed those comments that the Federal courts should not sit as zoning boards of appeal. What we have under the State of the State of the State of the State of the State  of the State makes it most difficult to engage brains in that survey滑  And many decisions by Federal and State courts since the enactment of the Telecommunications Act provision that I'm speaking of have appeal. Is it fair to assume that Congress sort of anticipated that Federal courts in this area of the Telecommunications Act might have anticipated that Federal courts might have to look at some of these? I think Congress anticipated that Federal courts would have to look at the specialized Telecommunications Act provisions about no prohibition, no discrimination, but that traditional zoning issues ought to be decided in the traditional act. Well, the statute doesn't exempt, it doesn't say with the exception of. No. Land use decisions. I mean, Congress seems to anticipate. I mean, they seem to have recognized that in some instances land use decisions might be subject to a, you know, the Federal court might have to deal with them. But as I was asking counsel, do you read the Telecommunications Act, this provision as precluding abstention doctrine? He said no. No, it certainly doesn't. But I don't think Congress intended to interfere with local processes for the decision of land use matters simply because they involve wireless facilities. And the State of Washington has a complex and comprehensive system that actually provides for the superior court sitting as the first level appellate court. It's a court of general jurisdiction. It's a court of general jurisdiction. It's not a specialized land use court. No. It reviews land use decisions on the record when a petition is filed. It is an extension, essentially, of the quasi-judicial process at the local level, and it provides part of the comprehensive scheme that can result in appeals beyond that level, which is where we are now in this case, that I think Congress would expect to be respected by the Federal courts. The board indicate any possible alternatives for the placement of the tower? The record does not suggest anything other than that a 150-foot tower at this location is sufficient to serve Singular's needs in this area. After the hearing examiner's decision on a motion for reconsideration, Singular proposed that a 120-foot tower would be sufficient. However, that issue was never vetted. It was never part of a public hearing. It was never photographed by simulation, and no one has been able to provide testimony about whether that is the cure here for the problem of a 150-foot tower. I was wondering if in the process there had been any discussion or comment by the hearing examiner or the board that there could be another location. No other location has been considered in this situation, and that would make a difference, wouldn't it? If there's no place they can put it, nobody wants it, I think the Telecommunications Act would indicate that we need a nationwide network. So far we have just one location to address here, but possibly two different towers, although, as I said, that hasn't been fully vetted. Let me ask you, and I want to still follow up on the district court's order with Callahan's initial question, which was, you responded that Colorado River provides the best doctrine or argument in which to uphold the district court's case. Does that mean that with respect to Pullman, I guess it's Pullman and Burford abstention, that you don't put much credence in those? I think that this can be justified under Pullman and Burford, Burford more so than Pullman, because of the question of whether Pullman is limited to constitutional issues, although we do have a constitutional claim here. As counsel pointed out, it's essentially the same constitutional claim under the State Constitution and the Federal Constitution. But we could find ourselves having to litigate a 14th Amendment Federal constitutional issue over whether the ordinances in question that call for compatibility of one of these towers with the neighborhood where it's to be located is unconstitutionally vague and a violation of due process. I read your brief carefully, and I'm looking for the ordinance or the section of the ordinance or the State law that you contend should be interpreted by the State courts, which would eliminate what I thought they had, a Federal due process. And I couldn't find the statute or the ordinance or what the interpretation is you were seeking from the State courts. I didn't see it. Maybe you could help me today. Is there a particular ordinance that could be interpreted by the State court that would eliminate any possible Federal due process notice claim? Well, if the court found that it was an erroneous interpretation of the law for the hearing examiner to have relied on an ordinance which relates to a comprehensive plan provision which speaks to the need for compatibility of a special use with the neighborhood where it's located. If that was an erroneous interpretation, then it would eliminate the vagueness issue. It would decide it essentially. But for this case. For this case. But it's not an interpretation of the statute. It would be an interpretation in the sense that. Has applied in this particular, on these families. It has applied. You can't mesh those two provisions and find that there must be compatibility, which is what the hearing examiner said did not exist and justified denial of the application here. What we have here in Washington's regulations on land use matters is a comprehensive and complex scheme. State law includes the Growth Management Act, the Regulatory Reform Act, and the Land Use Petition Act for the review of these decisions, the State Environmental Policy Act, which exists as an overlay to all other state and local regulations on land use, as well as provisions such as the Subdivision Act, which regulates the division of land into lots. All of these are laws which local government must respect and follow. But local government is also entitled to make its own regulations based on local conditions and local needs. So it is the mix of all of these that funnels itself into a petition to the Superior Court initially under the Land Use Petition Act for review. We contend that this is a kind of complex regulatory scheme that Burford spoke of that justifies abstention by the Federal courts. What Singular's contention is here on the merits of the case is that only technical and measurable criteria can be applied to issues having to do with the siting of wireless facilities. If they are successful, this will mean that no local decision can stand if it is based on the visible difference between a proposed use and existing uses, or the visible impact of a proposed use on inhabitants who swear that they find value in the scenic attributes of an area. This would be a sea change in the law in Washington, which has recognized that aesthetic considerations may be applied to any number of land use decisions. We think that is an issue that, if it is to be decided at all, should be decided by the State courts, not the Federal court. The plaintiff's Federal claims are preserved. If we have to go to Federal court to resolve them, we can. But the likelihood is we will either narrow those issues or perhaps dispose of the need to address them at all. I have a question. Assuming that Colorado River abstention would now be something that we should consider, at least we should consider whether it has any kind of merit even to remand, why do you allege that would apply? Colorado River applies primarily because there are the exceptional circumstances here of the fact that we have a State court decision on the LUPA issues that, if the Federal court, if the court of appeals were to remand to the District court and require the District court to address them, would produce two decisions that potentially would be in conflict. That's the overriding reason. How does the State court address the contention of singulaire with regard to the requirement of a nationwide network of cellular towers? Well, Thurston County provides for wireless facilities in many locations. In fact, it provides for them to be located in the rural residential one-dwelling unit to two acres zone that is involved here. But they must obtain a special use permit, which requires these considerations that include the compatibility of the facility. Well, but I guess the thing is, can their concerns, the State or the local concerns, trump a gap? If there is, in fact, a gap, do they have to come up with something to respond to that? If there is no alternative. But in at least the record based on the motion for reconsideration, there apparently is an alternative that has not been fully explored, the 120-foot tower. So I don't think we really have a gap in service issue, at least until that issue is decided. But we don't know. I mean, it's what he says, she says, or he says, he says, or whatever. That there are the two alternative proposals out there, not necessarily fully. Yeah, we don't know that it would be allowed. That's the whole point. That's correct, Your Honor. We do not know that. Thank you very much. Thank you. My 24 seconds. We'll make it a minute. I mostly just wanted to, in thinking about the question of the scope of the ruling that we would like here and about whether, how much of a bright line is appropriate in this case, we believe that this is unfortunately not the first time in the Western District of Washington that this situation has arose. We hope to get a clear ruling from this Court that makes it the last time, that where a claimant has clearly Federal issues joined in a Federal action, where there is undisputed, as there was here, supplemental jurisdiction over State claims, that that case goes forward on an expedited, expedited basis as Congress intended, and that where those Federal claims are properly pled, there is no basis for abstention. There may be some circumstance, as we discussed before, where the Federal claims are simply not there, and this is really just a State land use decision that's being raised. But where the Federal claims are clearly raised, as they are here, and they're clearly a supplemental jurisdiction, none of the cases dealing with abstention and the statute dealing with supplemental jurisdiction declination would not support a abstention or a declination in any circumstances, at least that I can conceive of. And we would ask that this Court issue a clear ruling so that we do not get caught up in this procedural morass and that we do get our Federal claims and State claims adjudicated expeditiously, even if it's 10 months, it's still more expeditious than two or three years, because at this rate, by the time the Court of Appeal rules, it may go to the State Supreme Court. So you want a published opinion if you win, but you don't want a published opinion if you lose? Well, that always goes without saying, but I feel confident enough that I would ask for a published opinion either way. But I do think this is an issue that needs to be cleared up. I mean, it really is unfair to litigants. It creates a huge judicial lack of economy in having to go through this process. These are – this has become a very expensive lawsuit because of the procedural posture that we're in. We really ought to be able to go into court in one lawsuit, get all these issues resolved expeditiously without having to address these type of procedural problems. And we'd ask that you so rule. Thank you. The matter is submitted. Thank you.
judges: Hug, Paez, Callahan